20707. JOHNSON *v.* THE STATE.

DECIDED OCTOBER 8, 1930.

*W. H. Lasseter,* for plaintiff in error.
*T. Hoyt Davis, solicitor-general,* contra.

LUKE, J. Having been convicted of having whisky, the defendant, Marvin Johnson, made a motion for a new trial containing the usual general grounds and two special grounds.

1. Sheriff G. E. Ball testified: that he saw the defendant and Jimmie Fussell at about five o'clock in the afternoon; that witness went to a place where he suspected these parties would get whisky and waited there until about midnight, but that they never came; that he returned to town and saw an automobile parked near the George McCall market; that soon thereafter witness and Mr. Myers, a deputy sheriff, went to the house where Charlie Lewis lived and stationed themselves back of said house; that the witness was about ten feet back from the sidewalk of said house, and Myers was further back than witness; that the witness could not see the door from where he was standing; that said door was about eight feet from the corner of said building; that witness saw the defendant get a jug out of the car in which he and Fussell were riding

and carry it in said house; that "the jug looked like it was full, and it looked like whisky," but that witness did not know what was in the jug; that Myers went in the house and searched the defendant, and the latter came out; that Myers then came out and "called out that he had found the liquor and to catch Johnson;" that witness turned to catch the defendant, but he ran away; that witness did not go in the house and did not know how many rooms were in it, and did not know what else was in the house; and that the transaction occurred in Fitzgerald, Ben Hill County, Georgia. A jug almost full of a light, yellow-colored whisky was then introduced in evidence, and the witness Ball testified that it was the jug that Myers brought out of the house.

The defendant stated that he got in Fussell's automobile at about midnight and went with Fussell to Charlie Lewis's house; that Fussell asked the defendant to take a jug in the house for him, and he did so; that it was a gallon jug, and was full of something "white looking, and not yellow like this one," but that he did not know what was in it; that when he stepped out of the door Mr. Myers searched him, and the defendant walked towards Pine street; that he "heard Mr. Myers call out that he had found liquor and went on around the corner;" that the jug he carried in the house was "full to the stopper," and that if the jug in evidence was in the same condition it was when found by the officer, it was not the jug he carried in the house; that if there was liquor in the jug he had possession of he did not know it; and that he was not guilty.

The sheriff testified that the jug the defendant carried in the house looked like the jug that was very shortly thereafter found there. The defendant admitted that he carried a jug in the house, and that the jug contained a white-looking liquid. The whisky in the jug in evidence was "light yellow in color." The time of night, the place, and all the circumstances under which the jug was delivered, as well as the flight of the defendant, were for the jury's consideration, and we can not say that there was not sufficient evidence to support the verdict. We hold that the court did not err in overruling the general grounds of the motion for a new trial.

The first ground of the amendment to the motion for a new trial is merely an elaboration of the general grounds, which have already been passed upon.

2. The next and last ground complains that when, after deliberating on the case for several hours, the jury "inquired of the court whether or not the jury had a right to recommend the defendant to the mercy of the court in case of a conviction," and the judge had answered the question in the affirmative, he refused counsel's oral request "to advise the jury that a recommendation of the jury to the mercy of the court in a misdemeanor case had no legal effect." It appears from this ground that the court had already charged: "This is a misdemeanor case, and, in the event of a verdict of guilty, you have nothing to do with the punishment, for that is left entirely to the discretion of the court, within certain limitations fixed by law." In view of this charge, the jury must have understood that they had nothing to do with fixing the penalty in the case. The very fact that the jury merely asked if they could recommend the defendant to the mercy of the court and went no further would appear to indicate that they were not in doubt as to the court's duties in the premises. The court answered the precise question asked, and would, no doubt, have answered any other proper question propounded by the jury. We do not think that it can reasonably be concluded that the court's refusal to instruct the jury as requested "was an inducement to any juror in the panel who may have been holding out against a conviction to agree to a conviction . . in the hope of a recommendation of mercy . . being a benefit to the defendant."

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*